UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CODY STRAUB,<br><br>                    Plaintiff,<br><br>        vs.<br><br>GEORGE JOHN FLEVARES,<br><br>                    Defendant. | 4:13-CV-04120-KES<br><br>ORDER DENYING<br>DEFENDANT'S MOTION FOR<br>PARTIAL SUMMARY JUDGMENT |

Plaintiff, Cody Straub, brings a negligence claim against defendant, George John Flevares, following an automobile accident in Yankton, South Dakota. Straub seeks actual and punitive damages. Flevares moves for partial summary judgment on Straub's punitive damages claim, arguing Straub cannot prove Flevares acted with malice. Straub resists the motion, asserting Flevares acted with implied malice. This court denies Flevares's motion for partial summary judgment.

**BACKGROUND**

The facts, as viewed in the light most favorable to Straub, the nonmoving party, are as follows:

On Thursday, April 7, 2011, George Flevares was drinking at the Yankton Elks Club in Yankton, South Dakota. As he usually did on Thursday afternoons, Flevares arrived at the Elks Club around 4:00 p.m., met with

friends, and drank Johnny Walker Red scotch on the rocks. Docket 23 at 2. Flevares continued to drink for over an hour and a half. He then got into his car and drove away on a road with heavy traffic. Docket 24 at 2. While heading southbound on Broadway, Flevares made a left hand turn into oncoming traffic. Flevares drove in front of Straub's car. The cars collided. Docket 22-1 at 1-2.

Shortly after the crash, the Yankton Police Department took samples of Flevares's blood for a blood alcohol content (BAC) analysis. *Id.* at 3. The results showed that Flevares's BAC, one-and-a-half hours after the crash, was 0.133%. *Id.* Expert analysis revealed that Flevares's BAC was between .141% and .156% at the time of the crash. Docket 20 at 2. Flevares does not dispute that his negligence caused the crash. *Id.* at 3. According to the Yankton Police Department, the collision occurred because Flevares failed to yield the right of way when turning. Docket 22-1 at 4.

During his deposition, Flevares agreed that drivers have an obligation to not drive while under the influence and that drunk driving is dangerous to others. Docket 21-4 at 2. Flevares also testified that he has never been convicted of a felony, had his driver's license revoked, or attended any type of alcohol treatment class. *Id.* at 3.

On October 25, 2013, Straub filed his complaint, seeking actual and punitive damages. Docket 1. Flevares argues punitive damages are not recoverable and moves for summary judgment on the issue. Docket 19; Docket 18.

## LEGAL STANDARD

Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must present admissible evidence showing there is no dispute of material fact or that the nonmoving party has not presented admissible evidence to support an element of the case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, "[t]he nonmoving party may not 'rest upon mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is not appropriate if there is a dispute about a material fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Federal jurisdiction in this action is predicated on diversity of citizenship. Therefore, the substantive law of South Dakota governs this case. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)) ("We apply South Dakota substantive

3

law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state in which it is located.").

## DISCUSSION

In South Dakota, punitive damages are generally not recoverable unless expressly authorized by statute. SDCL 21-1-4. Relevant South Dakota law provides

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21-3-2. Consequently, in tort cases where oppression, fraud, or malice is shown, the decision to ultimately award punitive damages belongs to the jury. *Kjerstad v. Ravellette Pubs., Inc.*, 517 N.W.2d 419, 425 (S.D. 1994).

In order to survive Flevares's motion for partial summary judgment, Straub "must prove to the court by clear and convincing evidence that a reasonable basis exists upon which a jury could award punitive damages." *Winterboer v. Edgewood Sioux Falls Senior Living, LLC*, No. 12-4049-KES, 2014 WL 28863, at *2 (D.S.D. Jan. 2, 2014) (citing *Dahl v. Sittner*, 474 N.W.2d 897, 902 (S.D. 1991)); *see also* SDCL 21-1-4.1. This burden is met if a plaintiff can show that there is "a 'reasonable basis' to believe punitive damages are warranted. In other words, the [plaintiff] must prove a 'prima facie case' for punitive damages." *Kjerstad*, 517 N.W.2d at 425 (internal citations omitted); *see also Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D.

4

1994) (explaining this is a "preliminary, lower-order quantum of proof than must be established at trial.") (quoting *Case v. Murdock*, 488 N.W.2d 885, 891 (S.D. 1992)).

While SDCL 21-3-2 limits its applicability to tort cases involving oppression, fraud, or malice, the South Dakota Supreme Court has further instructed that "[m]alice is an essential element of a claim for punitive damages[.]" *Dahl*, 474 N.W.2d at 900; *see also Selle v. Tozser*, 786 N.W.2d 748, 757 (S.D. 2010); *Bertelsen v. Allstate Ins. Co.*, 833 N.W.2d 545, 555 (S.D. 2013). Malice can be actual or presumed. *Dahl*, 474 N.W.2d at 901.

> Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts.

*Id.* at 900 (internal citations omitted). A plaintiff can meet their burden by showing either type of malice. *Selle*, 786 N.W.2d at 757.

Here, Straub relies upon a presumed malice theory. In cases where a plaintiff seeks punitive damages following an accident with an intoxicated driver, the South Dakota Supreme Court has observed that "intoxication, by itself, does not establish the malice necessary to impose punitive damages." *Berry v. Risdall*, 576 N.W.2d 1, 9 (S.D. 1998) (citing *Flockhart v. Wyant*, 467 N.W.2d 473, 478 n.7 (S.D. 1991)). Rather, presumed malice "implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations." *Dahl*, 474 N.W.2d at 900 (quoting *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). Thus, while an " 'injurious act is not

5

sufficient to constitute presumed malice,' " malice may "be shown by demonstrating a disregard for the rights of others." *Bertelsen*, 833 N.W.2d at 555-56 (citing *Selle*, 786 N.W.2d at 757)). Similarly, presumed malice "may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other." *Isaac*, 522 N.W.2d at 761. With respect to the willful and wanton operation of a vehicle, the South Dakota Supreme Court has said that

> [it] means something more than negligence. . . . There must be facts that would show that defendant intentionally did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to plaintiff.

*Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984). Whether conduct is willful or wanton is determined by an objective standard. *Id.* (citing *Brewer v. Mattern*, 182 N.W.2d 327 (S.D. 1970); *Chernotik v. Schrank*, 79 N.W.2d 4 (S.D. 1956)).

Because the South Dakota Supreme Court has determined that intoxication alone cannot serve as a basis for awarding punitive damages, it has looked to other factors that shed light on the defendant's conduct. In *Flockhart*, 467 N.W.2d at 474, the South Dakota Supreme Court reviewed the imposition of punitive damages against an intoxicated driver who caused a collision on Interstate 90.  The defendant had been drinking the night before as well as the day of the accident. She consumed two to three beers before leaving Wall, South Dakota, on a trip to Rapid City. *Id.* Additionally, she drank more

6

beer during the fifty-mile drive to Rapid City, as well as during a stop at a bar in New Underwood, a town roughly thirty-five miles west of Rapid City. *Id.* The defendant eventually lost control of her vehicle on the Interstate, went through the median, and struck the plaintiff's car. *Id.* When the accident occurred, she had alcohol with her in the car. *Id.* Her BAC was determined to be .30%. *Id.*

The defendant also had five previous alcohol related offenses dating back to 1972. *Id.* She had been through numerous alcohol treatment programs and had seen movies, attended classes, and listened to lectures pertaining to the hazards of drinking and driving. *Id.* Despite the correctional programs, DUI citations, and legal fines, she testified that they "had not kept her from drinking, nor had they kept her from driving while she had been drinking." *Id.* Considering the amalgamation of these factors, the court concluded that the defendant "must have known, with substantial certainty, the danger which her conduct engendered." *Id.* at 478.

In *Berry*, 576 N.W.2d at 2, the South Dakota Supreme Court analyzed a situation where the trial court allowed the issue of punitive damages to go to a jury following a collision between an intoxicated driver and a limousine. The *Berry* case differs from *Flockhart* because it was the plaintiff's limousine that pulled out in front of the defendant at an intersection, and the defendant may not have been able to avoid the accident. *Id.* at 3 n.1. Nonetheless, the court noted that the defendant had a BAC two hours after the accident of .122%. *Id.* Expert evidence placed the defendant's BAC at approximately .15% at the time of the accident. *Id.* at 10.

The collision occurred at approximately 8:00 p.m., and evidence showed that the defendant was traveling between 35 and 50 miles per hour in a 35 miles per hour zone. *Id.* at 2-3. The defendant admitted he had a "habit" of visiting a bar after work with co-workers, where he would consume approximately four drinks before driving himself home. *Id.* at 9. During the night of the accident, however, the defendant consumed between four and nine drinks in a span of less than two hours before driving home through potentially high traffic areas. *Id.* at 9-10. The defendant had also previously been convicted of DUI and was required to attend Alcoholics Anonymous meetings for a year and to complete an eight hour driving course. *Id.* at 10. In light of these factors, the South Dakota Supreme Court agreed with the trial court that there was sufficient evidence to submit the issue of punitive damages to the jury. *Id.*

In *Tranby*, 348 N.W.2d at 461, the Court analyzed whether a motorist's behavior amounted to willful and wanton misconduct following an accident involving a single car. The plaintiff, a passenger, sued the defendant under South Dakota's now repealed guest statute that predicated liability upon a showing that the driver acted willfully and wantonly. The accident occurred at night while the defendant was driving along a gravel road. *Id.* at 460. The defendant and plaintiff had both consumed alcohol, with the court attributing seven drinks to the defendant consumed between the hours of 6:30 p.m. and 10:45 to 11:00 p.m. when the crash occurred. *Id.* The defendant had been driving five to ten miles per hour in excess of the posted speed limit despite the

8

plaintiff's request to slow down. *Id.* at 461. The court nonetheless concluded
that this evidence was insufficient to constitute willful and wanton misconduct.
*Id.* at 461-62 (noting "there is no evidence from which a jury could find that
defendant's conduct was of such a nature that in all probability, as
distinguished from possibility, an accident would occur.").

These cases roughly sketch a spectrum of conduct involving intoxicated
motorists by which Flevares's conduct may be compared. Flevares primarily
asserts that his actions fall far short of those described in *Flockhart*, which
appears to be the worst of the three. Docket 19 at 7-8. Straub asserts that
Flevares's conduct is at least as onerous as the defendant's conduct in *Berry*,
Docket 24 at 1-3, which the South Dakota Supreme Court described as "not
overall as egregious as . . . *Flockhart*[.]" *Berry*, 576 N.W.2d at 10. Of these
cases, only in *Tranby* did the court conclude that the defendant did not
demonstrate "an affirmative, reckless state of mind or deliberate
recklessness[.]" *Tranby*, 348 N.W.2d at 461.

Viewing the facts and their inferences most favorably to Straub, as the
court must do following Flevares's motion for partial summary judgment, the
evidence shows that Flevares indulged in a habit of visiting the Elks Club for
drinks with friends on Thursdays. Docket 23 at 2. His routine is comparable to
that described in *Berry*, where the defendant had a habit of visiting a bar after
work. *Berry*, 576 N.W.2d at 9. Additionally, Flevares would sometimes drive
himself home after having several drinks, like the *Berry* defendant. Docket 23
at 2; *see also Berry*, 576 N.W.2d at 9. Between the opening of the Elks Club at

4:00 p.m. and the accident at 5:42, Flevares had consumed enough alcohol to raise his BAC as high as .156%. Docket 23 at 2; Docket 20 at 2. The defendant in *Berry* had a similar .15% BAC at the time of the accident in that case, and the court noted that he drank enough "in less than two hours before leaving [the bar]" in order to reach such a level. *Berry*, 576 N.W.2d at 9-10. Further, Flevares's chosen route home took him along Broadway, a road in Yankton with a relatively high amount of traffic for the area, especially during the time of the accident when people would be returning home from work. Docket 24 at 2. Although Yankton's population is several times smaller than that of Rapid City, the *Berry* court factored in the defendant's decision to drive through heavy traffic areas in its analysis. *Berry*, 576 N.W.2d at 9. Thus, as Straub contends, there are a number of similarities between the present case and *Berry*.

There are, however, additional factors that the court must consider which distinguish some of the facts in this case from the others. For example, Flevares has no prior history of alcohol related offenses, nor has he had his license suspended or been ordered to attend corrective programs like Alcoholics Anonymous meetings or driving classes because of his drinking. Docket 21-4 at 2; Docket 16 at 2. By comparison, the *Flockhart* defendant had a systemic history of alcohol related entanglement with the legal system, and had been required to view movies, classes, and lectures about the hazards of drinking and driving. *Flockhart*, 467 N.W.2d at 474. Despite the many fines paid and programs she attended, they "had not kept her from drinking, nor had they

10

kept her from driving while she had been drinking." *Id.* While the defendant in *Berry* had fewer criminal issues related to drinking and driving,[1] he was ordered to attended Alcoholics Anonymous meetings and complete an eight hour driving course. *Berry*, 576 N.W.2d at 10. Thus, the South Dakota Supreme Court described the *Berry* defendant as "a problem drinker who has been amply educated and warned as to the dangers of drinking and driving and has made a conscious choice to continue to do so anyway." *Id.* In both *Flockhart* and *Berry* the defendants were previously convicted and punished as a result of drinking and driving, and required to complete drinking and driving related programs. In both cases, however, the defendants failed to heed the official warnings given to them, and were subsequently involved in motor vehicle accidents. Here, Flevares acknowledged that he was aware motorists should not drink and drive. Docket 21-4 at 2. Nonetheless, his affirmance did not arise from, nor did the accident occur in spite of, the same sort of mandatory corrective measures imposed by court order in *Flockhart* and *Berry*.

Additionally, a few other distinguishing features are worth noting. Here, unlike the defendants in *Berry* or *Tranby*, Flevares was not driving at night when visibility could be diminished, nor was he driving on a gravel road as in *Tranby*. Additionally, unlike in *Berry*, there is no evidence that Flevares was

---

[1] The *Berry* defendant was convicted of DUI in 1991, which led to the corrective programs mentioned by the court. *Berry*, 576 N.W.2d at 10. The court also noted, however, that he pleaded guilty to an earlier DUI in 1984, but the plea resulted in suspended imposition. *Id.* at n.7. This information, and the programs that resulted from the two sentences, was relied upon by the trial court for purposes of determining whether the issue of punitive damages would be submitted to the jury. *Id.*

speeding. According to the accident report, Flevares was traveling 17 miles per hour in a 30 mile per hour zone. Docket 22-1 at 2. Further, unlike in *Flockhart*, Flevares was not drinking while he was driving.

Based on the foregoing, Flevares was admittedly negligent by operating his vehicle while under the influence of alcohol on the day of the accident. Additionally, the facts show Flevares has an ongoing, admitted problem with drinking and driving. As a result, Flevares caused an alcohol related accident on a South Dakota road or highway.[2] Although Flevares does not have the same history of flaunting prior legal reprimands or corrective programs as the defendants in *Berry* or *Flockhart*, Flevares's admitted history of drinking and driving, as well as his understanding that his conduct was illegal, demonstrates a "criminal indifference to civil obligations." *Dahl*, 474 N.W.2d at 900 (quoting *Hannahs*, 158 N.W.2d at 682). That Flevares has simply not been caught before does not make his course of conduct more acceptable, or change the fact that each time Flevares chose to get behind the wheel after consuming alcohol, he put himself and others in danger. His continued conduct of drinking and driving demonstrates "a disregard for the rights of other[]" motorists. *See Bertelsen*, 833 N.W.2d at 555-56 (citing *Selle*, 786 N.W.2d at 757)).

_____

[2] According to recent statistics from the South Dakota Department of Public Safety, of the 16,620 motor vehicle crashes that occurred in 2013, approximately 986 involved alcohol. *See* 2013 South Dakota Motor Vehicle Traffic Crash Summary, *available at* http://dps.sd.gov/enforcement/accident_records/documents/2013FactsBook.pdf.

By concluding that a motorist's intoxication cannot, by itself, establish the malice necessary to warrant punitive damages following a collision, the South Dakota Supreme Court has resisted imposing punitive damages against intoxicated drivers as a matter of course. Flevares's conduct here, however, was not simply the unfortunate result of one bad decision reached at the end of a single evening. Rather, his choice to regularly drink and drive in spite of knowing the dangers it posed "transcends negligence . . . [and] demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant." *Tranby*, 348 N.W.2d at 461. This, along with the other similarities to the *Berry* decision, is sufficient to allow the question of punitive damages to go to the jury. Therefore, the court concludes Straub has shown by clear and convincing evidence that a reasonable basis exists upon which a jury could find that Flevares acted with presumed malice. Consequently, Flevares's motion for partial summary judgment is denied.

## CONCLUSION

Punitive damages may be awarded in South Dakota when a defendant must have known, with substantial certainty, the danger that his or her tortious conduct engendered. Straub has submitted evidence that shows by clear and convincing evidence that a reasonable basis exists upon which a jury could find Flevares acted with presumed malice. Therefore, the question of whether punitive damages will ultimately be imposed may be presented to the jury. Accordingly, it is

ORDERED that defendant's motion for partial summary judgment (Docket 18) is denied.

Dated April 13, 2016

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

14